# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK DESPRES, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 3:20-cv-929 (SRU) |
| | : | |
| COMMISSIONER OF CORRECTION, | : | |
| Respondent. | : | |

## ORDER

On July 7, 2020, Mark Despres, a prisoner in Connecticut state custody,[1] filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Petition, Doc. No. 1. In 1997,

Despres pleaded guilty to (1) murder, in violation of Conn. Gen. Stat. § 53a-54a, and (2)

conspiracy to commit murder, in violation of Conn. Gen. Stat. §§ 53a-48 and 53a-54a. In 2003,

Despres was sentenced to 45 years' imprisonment for those two crimes. Since 2003, Despres has

been engaged in nearly-continuous post-judgment litigation in an attempt to challenge various

aspects of his convictions and the process by which they were obtained. In this petition, Despres

raises two grounds for relief: (1) Between his guilty pleas in 1997 and his sentencing in 2003,

the state trial court violated Despres' constitutional rights by denying him the opportunity to

represent himself; and (2) the court clerk who presided at Despres' 2003 sentencing violated

Despres' right to due process by not informing Despres of his right to appeal. *See* Petition, Doc.

No. 1, at 6–8.

On October 14, 2020, respondent—the Commissioner of Correction (the

"Commissioner")—filed a motion to dismiss Despres' petition. *See* Mot. to Dismiss, Doc. No.

---

[1]     *See Inmate Information*, CONN ST. DEP'T OF CORR.,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=101944 (last visited June 25, 2021).

10.  In that motion to dismiss, the Commissioner argues that Despres' petition was untimely filed and presents issues that have not been properly exhausted in the Connecticut state courts.  *See id.* at 1.  Despres filed an opposition.  *See* Despres' Opp'n, Doc. No. 21.  Subsequently, the Commissioner withdrew its argument based on untimeliness.  *See* Notice, Doc. No. 22, at 2.  I then requested further briefing and an expanded record regarding whether Despres' first ground for relief—that he was denied the right to represent himself—had been properly exhausted.  *See* Order to Show Cause, Doc. No. 23.  On March 11, 2021, the Commissioner filed a response to my order.  Comm'rs Response, Doc. No. 27.  On March 23, Despres filed a second opposition. *See* Despres' 2d Opp'n, Doc. No. 28.

I **grant** the Commissioner's motion to dismiss because Despres has not exhausted his state court remedies.  This case is dismissed without prejudice.  Despres is free to raise these issues in a subsequent habeas petition in the Connecticut state courts.

I.    **Background**

A.    Factual Background

The facts underlying Despres' habeas petition are brutal and notorious.  Here is how the Appellate Court of Connecticut recounted them in 2016, when ruling on one of Despres' state habeas petitions.

> On March 10, 1994, Despres murdered Anson B. Clinton III at the request of former Attorney Haiman Clein.  Clein was having an affair with an associate in his law firm, former Attorney Beth Ann Carpenter, whose sister was married to Clinton. Carpenter was engaged in a custody dispute over the daughter of her sister. Carpenter asked Clein to kill Clinton, and Clein hired Despres to commit the murder. Clein told Despres that he was involved with a woman whose niece was being abused by Clinton, and that the only way to stop the abuse was to kill Clinton.
>
> Through a newspaper advertisement, Despres discovered that Clinton was selling a

tow truck. Despres called Clinton and made arrangements to meet him at a designated time and place to discuss his interest in purchasing the truck. Despres brought his fifteen year old son to the meeting and, after a brief conversation, Clinton agreed to show them the truck. Despres and his son followed Clinton on Interstate 95 to an exit in East Lyme. Despres flashed his headlights, indicating that he wanted Clinton to pull over to the side of the roadway. After stopping, Clinton and Despres exited their vehicles and Clinton approached Despres. Despres then shot Clinton multiple times and ran over his body while speeding away from the scene when he saw headlights approaching the area. Clinton died from gunshot wounds to his head and upper body.

*Despres v. Comm'r of Corr.*, 166 Conn. App. 572, 575–76 (2016) (replacing "the petitioner" with "Despres" throughout); *see also State v. Carpenter*, 275 Conn. 785, 789–94 (2005) (setting out further factual background); Kathryn Kranhold, *Lawyer Arraigned on Murder Charges*, HARTFORD COURANT (Feb. 14, 1996), https://www.courant.com/news/connecticut/hc-xpm-1996-02-14-9602140294-story.html.

B.    Procedural Background

Although Despres murdered Clinton in March 1994, authorities did not arrest Despres until October 1995. Despres was charged with three crimes: the two crimes to which he ultimately pleaded guilty and also murder for pecuniary gain, in violation of Conn. Gen. Stat. § 53a-54b. Because murder for pecuniary gain was a capital offense in Connecticut, Despres was potentially subject to the death penalty. *See* Conn. Gen. Stat. § 53a-35a.

Initially, Despres was represented by New London public defenders Bruce Sturman and James McKay. *See* Docket, Doc. No. 11-1, at 6. On December 8, 1995, Despres gave an inculpatory statement implicating himself in Clinton's murder. *See Despres v. Warden*, 2011 WL 782592, at *1 (Conn. Super. Ct. Mar. 8, 2011). On December 14, 1995, Despres waived his probable cause hearing and pleaded not guilty to all three crimes. *See* Hr'g Tr., Doc. No. 11-1, at

3

32–39.  In January 1996, Despres switched representation to special public defender Ira

Grudberg.  *See* Docket, Doc. No. 11-1, at 6.  That representation did not last long:  In March

1996, Despres switched representation to Michael Fitzpatrick.  *See id.* at 7; *see also* Habeas Trial

Tr., Doc. No. 27-2, at 9.  In 1996 and 1997, Attorney Fitzpatrick "investigated the case in

preparation for trial . . . and hired a forensic psychiatrist and a sentencing consultant" to examine

Despres.  *Despres*, 166 Conn. App. at 576.  Although the case appeared headed to trial—jury

selection occurred in April and May 1997—Attorney Fitzpatrick engaged in "extensive plea

negotiations" with the state.  *See id.*  Despres "was fully engaged in assisting with his defense

and in discussing the state's plea offers with Fitzpatrick."  *Id.*[2]

On May 6, 1997—just before trial was about to begin—Despres decided to plead guilty

to the two lesser charges against him (murder and conspiracy to commit murder) in exchange for

a recommended sentence of 45 years' imprisonment.  *See* Plea Agreement, Doc. No. 11-1, at 40–

42; Plea Hr'g Tr., Doc. No. 11-1, at 43–67.[3]  Under the plea agreement, Despres reserved the

right to argue for a lesser sentence.  Also under the plea agreement, Despres agreed to cooperate

with the state in its prosecutions of his co-conspirators, Carpenter and Clein.  The plea agreement

had the major virtue of taking the death penalty off the table for Despres.  Despres' sentencing

---

[2]       Although not relevant for purposes of this habeas petition, in my view, there is some evidence in the record
to contradict the Appellate Court's conclusion that Despres and Attorney Fitzpatrick were working together on
Despres' defense.  The case's docket and Attorney Fitzpatrick and Despres' testimony at Despres' 2014 habeas trial
reflect that the relationship between the two was often strained.  *See, e.g.*, Docket, Doc. No. 11-1, at 8 (in February
1997, Despres made a *pro se* motion to dismiss Attorney Fitzpatrick, but then Despres withdrew the motion).

[3]       At Despres' plea colloquy, the trial court canvassed Despres regarding his rights and his decision to enter
guilty pleas.  *See* Plea Hr'g Tr., Doc. No. 11-1 at 55–63.  The trial court also explained on the record that the terms
of the written plea agreement provided for Despres' cooperation in any investigations and prosecutions surrounding
the Clinton murder.  *Id.* at 59.  Throughout, Despres indicated that he understood the court's questions and the
consequences and terms of his plea agreement.

was continued "until after all other proceedings related to the death of Anson Clinton have been resolved." Plea Hr'g Tr., Doc. No. 11-1, at 64.

The Appellate Court of Connecticut well summarized what followed:

> Soon after entering his guilty pleas, Despres began expressing his dissatisfaction with his agreed upon sentence and threatened to discontinue his cooperation with the state unless a more beneficial plea agreement could be reached. He also threatened to engage in a hunger strike.[4] He filed motions to withdraw his guilty pleas, and motions to discharge his attorney and to proceed as a self-represented party. When Carpenter was criminally prosecuted for her role in Clinton's death, Despres refused to testify at her trial. On April 22, 2002, the state's attorney notified Despres that he had violated the terms of the plea agreement.[5]

*Despres*, 166 Conn. App. at 577 (replacing "the petitioner" with "Despres" throughout).

In late 2002, the situation was precarious. Because Despres had violated the terms of his plea agreement, there was a very real possibility that the state would reinstate the capital murder charge and try Despres, with the possible result that Despres would again face the death penalty. Thus, Despres "consulted with," and ultimately elected to retain, Attorney Jon Schoenhorn. *See id.* at 577–78; Docket, Doc. No. 11-1, at 14. Attorney Schoenhorn "succeeded in convincing the state not to vacate the plea agreement," and sentencing went forward in February 2003. *Despres*, 166 Conn. App. at 577–78. At the sentencing hearing, Attorney Schoenhorn "argued for a lesser

---

[4]     Despres says that he did, in fact, engage in a hunger strike. *See* Habeas Trial Tr., Doc. No. 27-2, at 103.

[5]     *See also* Notice, Doc. No. 28, at 27 (April 22, 2002 letter from the state to Attorney Fitzpatrick notifying Attorney Fitzpatrick that Despres "has violated the terms of the plea agreement").

period of incarceration" than 45 years.  *Id.* at 578; Sentencing Hr'g Tr., Doc. No. 11-1, at 68–79.[6]  But the sentencing judge sentenced Despres to 45 years' imprisonment.

Despres was not advised of his right to appeal either by the sentencing judge or the clerk of court.  *See Despres*, 166 Conn. App. at 578 & n.3.  Despres did not appeal from the judgment of conviction.  However, "[s]everal months after the sentencing," Despres "contacted Schoenhorn and raised the issue of appealing his convictions."  *Id.* at 578.  Then began Despres' long-running post-judgment litigation.

First, sometime in 2003,[7] Despres filed his first habeas petition in Connecticut state court. Nothing is known about the substance of that habeas petition.  Despres withdrew the petition in 2005, and the file was subsequently "purged."  Notice, Doc. No. 22, at 2; Comm'rs Response, Doc. No. 27, at 4.

Second, on November 3, 2005, Despres filed a *pro se* motion to correct an illegal sentence pursuant to Connecticut Practice Book § 43-22.  *See* Mot. to Correct Illegal Sentence, Doc. No. 11-3.  In that motion, Despres argued that (1) his convictions violated the Constitution's prohibition against double jeopardy and (2) the Connecticut trial court had no jurisdiction over him.  *See id.*  On January 26, 2006, the trial court denied Despres' motion in a few handwritten sentences.  *See* Order, Doc. No. 11-1, at 87–88.  On April 22, 2008, the

---

[6]     Despres testified at his 2014 habeas trial that Attorney Schoenhorn made no argument at all at his sentencing hearing.  *See* Habeas Trial Tr., Doc. No. 27-2, at 129–30.  From the portion of the sentencing transcript affixed to the Commissioner's motion to dismiss, Despres appears to be correct that Attorney Schoenhorn made no oral argument on the record in open court on Despres' behalf.  However, it is also clear from that portion of the transcript that Attorney Schoenhorn did argue for a lesser sentence.  *See* Sentencing Hr'g Tr., Doc. No. 11-1, at 69 ("I want to commend both counsel for their aid to the Court in the sentencing"); *id.* at 70 ("I've got the defendant who is obviously requesting something on the lower end of the murder scale, down around 30 or so . . . .").

[7]     Despres claims it was June 2003, but the Commissioner does not confirm that fact.  *See* Despres' Opp'n, Doc. No. 21, at 4.

Appellate Court of Connecticut affirmed, and, on July 1, the Connecticut Supreme Court denied certification. *See State v. Despres,* 107 Conn. App. 164, *cert. denied*, 288 Conn. 904 (2008). In affirming, the Appellate Court explicitly laid out the issues it considered were presented by Despres' motion;[8] none of those issues was one of the two issues raised in the instant habeas petition.

On April 9, 2008—before the Appellate Court had yet affirmed the denial of Despres' motion to correct an illegal sentence—Despres filed his second habeas petition. *See* Docket, Doc. No. 11-6. In October 2008, Attorney Laljeebhai Patel was appointed to represent Despres. *See id.* at 2–3. In January 2010, Despres amended his second habeas petition. *See id.* at 3. In that amended petition, Despres asserted one count: Ineffective assistance of counsel by Attorney Fitzpatrick. *See* Am. Petition, Doc. No. 27-4. More specifically, Despres claimed that Attorney Fitzpatrick "failed to ensure that Despres' pleas were knowing, intelligent and voluntary" because Attorney Fitzpatrick: (1) "was cognizant that Despres had insisted on going to trial and that Despres' December 8, 1995 statement was the product of coercion by Attorney [] Sturman," (2) "did not review the Court's canvass with Despres prior to the pleas," and (3) "did not make Despres aware of the elements of the offenses prior to the plea." *Id.* at 3 (replacing "the petitioner" with "Despres" throughout). Although no trial transcript is included in the record, a habeas trial was held on January 11, 2011, and, there, Despres was represented by Attorney

---

[8]    *See State v. Despres*, 107 Conn. App. 164, 166 (2008) ("We agree with the state's characterization of th[e] issues as follows: (1) whether the defendant's conviction and sentence for both murder and conspiracy to commit murder violate his constitutional protection against double jeopardy, (2) whether the defendant's federal constitutional right to a grand jury extends to criminal proceedings in Connecticut state courts, (3) whether the court had jurisdiction to accept the defendant's pleas and impose sentence because he was not indicted by a grand jury, and (4) whether the statutes modifying Connecticut's grand jury procedures and establishing probable cause hearings are constitutionally defective.").

Patel. *See* Docket, Doc. No. 11-6. The habeas trial court issued a decision denying Despres'

second habeas petition. *See Despres v. Warden*, 2011 WL 782592, at *8 (Conn. Super. Ct. Mar.

8, 2011). Despres appealed to the Appellate Court, but, in July 2011, he "withdrew that appeal."

*Despres*, 166 Conn. App. at 578; *see also* Docket, Doc. No. 11-6, at 3–4.

On February 1, 2011—which was, again, even before the state habeas trial court had

issued a decision on his second habeas petition—Despres filed a third habeas petition. *See*

Docket, Doc. No. 11-8. In April 2012, Attorney April Brodeur was appointed to represent

Despres. *See id.* at 2–3. After Attorney Brodeur's appointment, Despres amended his petition

twice. In April 2014, Despres filed the final (second) amended petition. *See id.* at 3; Second

Am. Petition, Doc. No. 11-10. In that petition, Despres asserted four counts: (1) ineffective

assistance of trial counsel by Attorney Schoenhorn, (2) ineffective assistance of trial counsel by

Attorney Fitzpatrick, (3) ineffective assistance of habeas counsel by Attorney Patel, and (4) a due

process and judicial conflict of interest claim against the judge who presided over Despres' 2011

habeas trial. *See* Second Am. Petition, Doc. No. 11-10, at 4–9. The only part of Despres'

petition that is relevant here is count one regarding Attorney Schoenhorn.[9]

---

[9]     In no other count does Despres mention the right to represent himself. In count two, Despres alleges that
Attorney Fitzpatrick was constitutionally ineffective by "fail[ing] to properly investigate [Despres'] mental state
before his 1997 plea." Second Am. Petition, Doc. No. 11-10, at 5. In count three, Despres alleges that his habeas
counsel (Attorney Patel) was constitutionally ineffective for "fail[ing] to object to Judge Purtill hearing [Despres']
habeas trial," "fail[ing] to move to recuse Judge Purtill from [Despres'] habeas trial," "fail[ing] to pursue the
restoration of [Despres'] appellate rights as an issue," and "fail[ing] to enter certain exhibits into evidence." *Id.* at
6–7. Count four was a due process claim regarding a potential conflict of interest involved with Judge Purtill's
presiding over Despres' 2011 habeas trial. *Id.* at 7–9.

Despres titled count one as follows: "**COUNT ONE – INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL – LOST RIGHT TO DIRECT APPEAL – Atty. Schoenhorn**." *Id.* at 4. Despres then identified the reasons why Attorney Schoenhorn had been ineffective:

    a.    Trial counsel Schoenhorn knew or should have known that Despres had sought to withdraw his plea numerous times;

    b.    Trial counsel Schoenhorn knew or should have known that Despres had sought to represent himself numerous times and requested a <u>Faretta</u> hearing;

    c.    Trial counsel Schoenhorn knew or should have known that Despres would want to appeal his plea;

    d.    Trial counsel Schoenhorn failed to advise Despres of his right to appeal his plea;

    e.    Trial counsel Schoenhorn advised Despres that he had no right to appeal his conviction;

    f.    As a result Despres filed no direct appeal of his convictions.

*Id.* (replacing "the petitioner" with "Despres" throughout).

On May 6, 2014, trial commenced on Despres' third habeas petition. *See* Habeas Trial Tr., Doc. No. 27-2. Four witnesses testified: Attorney Fitzpatrick, Attorney Patel, Attorney Schoenhorn, and Despres.

Attorney Fitzpatrick described the process of negotiating Despres' plea agreement and testified that Despres began expressing dissatisfaction with the plea agreement "[w]ithin the first couple of months" after signing it. *Id.* at 17. Attorney Fitzpatrick recounted that Despres "took a number of positions or steps that placed that agreement in jeopardy," such as refusing to cooperate at Beth Carpenter's trial. *Id.* at 16, 19–21. Attorney Fitzpatrick also testified about Despres' mental state and competence, and his trial and plea negotiation strategy. *Id.* at 23–48.

9

Attorney Patel did not recall much regarding his representation of Despres during his 2011 habeas trial. However, Patel recollected that, in that habeas trial, "there was – [at] most – I believe just one issue maybe," which was whether Despres' "plea was not entered knowingly, intelligently, and voluntarily." *Id.* at 51.

Attorney Schoenhorn testified at length regarding his role in salvaging Despres' plea agreement in late 2002 and early 2003 and in Despres' sentencing. Regarding self-representation, Attorney Schoenhorn stated that Despres never expressed to him a desire to represent himself, or to try to preserve that issue for appeal. *See id.* at 72–73; 83.[10] Regarding a direct appeal, Attorney Schoenhorn testified that, on the day of sentencing, he told Despres that he "did not see any basis for an appeal," but that "a few months after the sentencing, there was . . . some conversation about pursuing an appeal." *Id.* at 75. Attorney Schoenhorn reiterated that the only discussion regarding a direct appeal occurred "months out" from Despres' sentencing and "was in conjunction with whether or not he wished to file a habeas." *Id.* at 79.

Despres testified about various aspects of this case's history. Regarding his attempts to go *pro se*, Despres indicated that he filed "like six or seven" *pro se* motions before his sentencing, some of which were to "get my pleas back," and others of which were "to act *pro se*." *Id.* at 104; *see also id.* at 135 (indicating that in "one or two" of his *pro se* motions, Despres asked for replacement counsel, and "other times I had asked to go *pro se* on my own"). Despres

---

[10]    Q       Did he ever at any point express to you a desire to represent himself that is to proceed without the benefit of counsel?

         A       No. Although I'm aware that at some point at an earlier stage he had expressed that view but not – it was certainly not something he expressed to me nor did he wish to preserve that issue for any purpose that I know of.

Habeas Trial Tr., Doc. No. 27-2, at 83.

confirmed that the reason he wanted to act *pro se* was so that he could "get my pleas back." *Id.* at 106. In contrast to Attorney Schoenhorn's testimony, Despres said that he did, in fact, discuss with Attorney Schoenhorn his desire to represent himself. *See id.* at 110, 124–25.

At the conclusion of the 2014 habeas trial, the court asked Despres' attorney more specifically about when the trial court had ever denied Despres' request to represent himself. *See id.* at 145–46. Despres' attorney pointed to *pro se* motions dated (1) July 5, 2000, (2) May 2, 2001, and (3) June 26, 2002. *See id.* at 145–47.

On November 6, 2014, the habeas court issued a decision denying Despres' third habeas petition. *See* Mem. of Decision, Doc. No. 27-3. In that decision, the habeas court characterized Despres' third habeas petition as advancing the following claims:

> (1) Attorney Fitzpatrick was ineffective in failing to investigate Despres' mental state and using such information to obtain a more favorable plea agreement;
>
> (2) Attorney Schoenhorn was ineffective in failing to appeal;
>
> (3) Attorney Patel was ineffective for failing to object to Judge Purtill presiding over the habeas matter because he had heard certain preliminary pretrial matters in the criminal proceeding and failing to argue that Attorney Schoenhorn was ineffective for failing to appeal his conviction; and
>
> (4) [H]is due process rights were violated by having Judge Purtill preside over his first habeas case when he decided pretrial matters in the criminal case.

*Id.* at 8 (replacing "the petitioner" with "Despres"). As relevant here, the habeas court articulated several reasons why Despres had failed to establish an ineffective assistance claim with respect to Attorney Schoenhorn,

First, Attorney Schoenhorn had not been retained for purposes of any appeal—but, rather, only for sentencing—and so Attorney Schoenhorn's failure to advise Despres of his right to

11

appeal was not prejudicial. *See id.* at 14–15. Second, after pleading guilty, Despres "did not inform Attorney Schoenhorn that he wished to appeal from his conviction," and he "did not express any interest in a possible appeal to Attorney Schoenhorn until months after his conviction." *Id.* at 15. Because Attorney Schoenhorn had achieved his aim of reviving the plea agreement, the habeas court wrote that "[u]nder the circumstances, there was no reason for Attorney Schoenhorn to presume [Despres] would want to appeal." *Id.* Third, Despres "failed to demonstrate that there were any nonfrivolous grounds to appeal," including regarding "the trial court's denial of his right to represent himself." *Id.* The habeas court wrote that Despres had "submitted no motion acted upon by the court, or trial transcript, indicating that he wished to proceed in a self-represented capacity." *Id.* at 16. The habeas court specifically discussed Despres' May 2, 2001 *pro se* motion for a *Faretta* hearing, which was withdrawn on the record on May 18. *See id.* "[B]ased on this record," the habeas court wrote, "there is no basis for an appeal as to [Despres'] motions to represent himself." *Id.*

Despres appealed. His brief raised two issues. Only the first is relevant. (The second regarded Judge Purtill's potential recusal.) Despres argued that "the habeas court violated [Despres'] constitutional rights to due process of law when it misconstrued the ineffective assistance of counsel claim against sentencing counsel involving the right to appeal and used an erroneous standard and analysis in rejecting count one." Appellate Br., Doc. No. 11-11, at 17. Despres argued that the habeas court had applied the incorrect legal standard in considering whether Attorney Schoenhorn's failure to advise Despres to appeal amounted to ineffective assistance of counsel. Despres pointed out that an attorney has an obligation to inform a client of his right to appeal "when either (1) the defendant has reasonably demonstrated to counsel his or

12

her interest in filing an appeal, or (2) a rational defendant would want to appeal under the circumstances." *Id.* at 20–21 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)).  In Despres' view, given that standard, Attorney Schoenhorn had been constitutionally ineffective because Despres had established that "non-frivolous appellate issues" existed, such as "error in denying the petitioner's motions . . . to represent himself." *Id.* at 21–22; *see also id.* at 17 (citing seven *pro se* motions that, according to Despres, "pertain[ed] to his request to be pro se and his desire to withdraw his guilty plea").  "[P]articularly based upon [Despres'] attempts to withdraw his plea and his attempt to represent himself," Despres argued, "Attorney Schoenhorn should have known that a rational defendant would want to appeal." *Id.* at 26.

On June 28, 2016, the Appellate Court affirmed the judgment of the habeas court. *See Despres*, 166 Conn. App. at 575.  In doing so, the Appellate Court held that the "record supports the habeas court's determinations" of the following facts:

- Despres did not inform Attorney Schoenhorn that he wished to appeal from his conviction "until months after his conviction."

- "[T]here would have been no reason for Schoenhorn to believe that [Despres] wished to appeal because he had been retained to preserve the plea agreement, cap [Despres'] sentence at forty-five years, and avoid the possibility of a death sentence for a charge of capital felony murder."

- Despres "failed to demonstrate that he had any nonfrivolous grounds to appeal" because Despres "failed to provide an adequate legal or factual record with respect to those claims."  That was because Despres' motions to represent himself and to withdraw his guilty pleas "failed to state reasons for the relief requested, and no transcripts were submitted that demonstrated that the motions were pursued and denied by the trial court."

*Id.* at 582–83 (cleaned up). Thus, the Appellate Court concluded "that the habeas court applied the proper legal standard and analysis, and that the record supports the court's determination that [Despres] failed to demonstrate that Schoenhorn rendered ineffective assistance." *Id.* at 583.

On August 3, 2016, Despres filed a petition for certification in the Connecticut Supreme Court. *See* Petition for Cert., Doc. No. 27-1. Despres again articulated two issues for review, but only the first is relevant: Whether the Appellate Court erred "when it found that the habeas court applied the proper legal standard and analysis, and that the record supports the court's determination that [Despres] failed to demonstrate that Schoenhorn rendered ineffective assistance?" *Id.* at 2. Despres again highlighted the "numerous motions pertaining to his request to be pro se and his desire to withdraw his guilty plea" and reiterated his argument that those motions should have alerted Attorney Schoenhorn to Despres' potential desire to appeal. *See id.* at 4; *see also id.* at 7 ("[Despres'] attempts to withdraw the plea and to represent himself repeatedly evinced his belief that this plea deal was not in his best interest."). On September 27, 2016, the Connecticut Supreme Court denied certification for discretionary review. *See Despres v. Comm'r of Corr.*, 323 Conn. 916 (2016).

On March 15, 2016—while his appeal was pending before the Appellate Court—Despres filed a fourth habeas petition in state court. *See* Docket, Doc. No. 11-9. The record does not shed any light on the contents of that petition. On June 9, 2020, Despres withdrew that habeas petition. *See id.*

## II. Rule of Exhaustion

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also*

14

28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner[s'] federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Wood v. Milyard*, 566 U.S. 463, 471 (2012) ("The exhaustion doctrine . . . is founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries.").

"To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (cleaned up). The petitioner may have presented that claim to the state's highest court either on direct or collateral review: "[A] prisoner does not have 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review.'" *O'Sullivan*, 526 U.S. at 844 (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)). A petitioner must seek review in the state's highest court, even if review is discretionary and unlikely to be granted, because petitioners must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845; *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.").

Sometimes, when a petitioner arrives in federal habeas court, his claims of constitutional error appear slightly (or very) different from those that he purportedly exhausted through state court review. When that is the case, the petitioner's claim in the federal habeas case is properly exhausted only if the claim has been "fairly presented" to the relevant state courts. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) (cleaned up); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that to "fairly present" a federal claim in state court, petitioner must have "alert[ed]" the state courts "to the federal nature of the claim") (citing *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "The claim presented to the state court, in other words, must be the substantial equivalent of the claim raised in the federal habeas petition." *Keane*, 329 F.3d at 295 (cleaned up); *see also Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010). A petitioner must have "put before the appropriate state court all of the essential factual allegations, and essentially the same legal doctrine, asserted in the federal petition." *McKinney v. Artuz*, 326 F.3d 87, 96–97 (2d Cir. 2003) (quoting *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191–92 (2d Cir. 1982) (*en banc*)) (cleaned up).

If a petitioner has failed to exhaust his state court remedies, a federal court may excuse that failure "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also* 28 U.S.C. § 2254(b)(1)(B). The petitioner may not, however, simply wait until appellate remedies are no longer available and then argue that the

claim is exhausted. *See Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir. 2005) ("A petitioner may not evade exhaustion's strictures by defaulting his or her federal claims in state court.").

When state procedural rules prevent a petitioner from "present[ing] his unexhausted claim of trial error to the state courts," federal habeas courts "deem the claim procedurally barred." *Richardson*, 621 F.3d at 201 (quoting *Acosta v. Artuz*, 575 F.3d 177, 188 (2d Cir. 2009)); *see also Aparicio*, 269 F.3d at 90. In Connecticut, when a petitioner "has failed to follow the proper procedures by which to correct his sentence or to preserve his challenge to the sentence before having filed this petition . . . his petition is procedurally defaulted." *Crawford v. Comm'r of Corr.*, 294 Conn. 165, 186 (2009) (quoting *Cobham v. Comm'r of Corr.*, 258 Conn. 30, 39–40 (2001)).

"Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits," and so "any future presentation of the claim would be a second or successive habeas petition," which Despres could file only with authorization from the Second Circuit. *Aparicio*, 269 F.3d at 90; *see also* 28 U.S.C. § 2244(b)(3). "For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748–50)); *see also Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (remarking, in context of section 2255 petition, that "[w]here a defendant has procedurally defaulted a claim . . . , the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent") (citing, *inter alia*, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)) (cleaned up).

## III.    Discussion

As described above, Despres asserts two grounds for relief in this habeas petition. First, Despres argues that his constitutional right to self-representation was violated because the state trial judge refused to allow Despres to represent himself. *See* Petition, Doc. No. 1, at 5. Second, Despres argues that his "right to appeal was violated by the court clerk not telling or providing appeal papers" following his sentencing in 2003. *Id.* at 8. Confusingly, Despres takes contradictory positions in his papers regarding whether those claims have been exhausted in the Connecticut state courts. Of course, Despres did not file a direct appeal following his convictions. And, frequently, Despres claims that the grounds raised in this petition were not raised in any state post-conviction proceeding.[11] But, other times, Despres argues that those claims were, in fact, presented to the Connecticut state courts in the course of litigating his third habeas petition from 2014 through 2016.[12] Despres' shifting views reflect an important (and dispositive) misunderstanding. As Despres himself acknowledges, the two grounds raised in this petition were *not* heard on their own as stand-alone constitutional claims, but "were heard under ineffective assistance of counsel[]." Despres' Opp'n, Doc. No. 21, at 5. Because presenting those grounds for relief as part of an ineffective assistance of counsel claim did not fairly present them to the Connecticut state courts, Despres has not exhausted his state court remedies with respect to the two grounds that he raises here, and so I **dismiss without prejudice** his petition.

---

[11]     *See, e.g.*, Petition, Doc. No. 1, at 4 ("The two grounds raised in this petition have not been heard."); *id.* at 5 (claiming that ground one "has never been heard" because "I was told by all my attorney[s] that being denied by the Court to represent myself has nothing to do with ineffective assistance of trial counsel at a state habeas"); *id.* at 8 (claiming that ground two "was never heard at habeas trial" because "[m]y attorney said it was court error not ineffective assistance of trial counsel," and "[t]he attorney never briefed the appeal claim to the Appellate Court[] . . . [a]nd never said anything in court on this ground"); *id.* at 9 (remarking that in his second habeas case, Despres' lawyer "never said anything about the clerk of the courts job to notify the petitioner" and "never briefed it").
[12]     *See* Despres' Opp'n, Doc. No. 21, at 1 ("Both claims were adjudicated in state court, appealed and then were denied cert, to appeal in the state supreme court."); *id.* at 4 (similar).

1.      Ground One:  Right to Self-Representation

The Sixth Amendment guarantees the right of an accused to represent himself.  *See*

*Faretta v. California*, 422 U.S. 806, 821 (1975).  There is no question that, on several occasions

in the trial court, Despres sought to represent himself.  Although the state habeas courts thought

otherwise, my independent review of the docket and the evidence submitted in connection with

this petition indicates that, on at least one occasion, the state trial court considered and rejected

Despres' request on the record after a hearing.[13]

Regardless, the record is clear:  Despres never appealed that denial, and he never raised it

directly in a habeas petition (or other post-conviction proceeding).  Regarding direct appeal,

Despres admittedly did not file a direct appeal of his convictions after his sentencing.  Regarding

post-conviction proceedings, Despres filed his first habeas in 2003, but, as discussed above,

nothing is known about the substance of that habeas petition, and, in any event, Despres

withdrew it in 2005, so the Connecticut Supreme Court never considered it.  In 2005, Despres

---

[13]      In its memorandum of decision, the state habeas trial court wrote that Despres had "submitted no motion acted upon by the court, or trial transcript, indicating that he wished to proceed in a self-represented capacity." Mem. of Decision, Doc. No. 27-3, at 16.  The habeas court specifically discussed only Despres' May 2, 2001 *pro se* motion for a *Faretta* hearing, which was withdrawn on the record on May 18.  *See id.*; *see also* Docket, Doc. No. 11-1, at 10–11 (indicating that Despres' *pro se* motion was filed on May 4).  The Appellate Court noted that the "record supports the habeas court's determination[]" that Despres had "failed to provide 'an adequate legal or factual record'" with respect to his alleged attempts to represent himself.  *Despres*, 166 Conn. App. at 582–83.
          In my view, Despres did alert the state habeas court to a motion requesting to represent himself that was subsequently denied.  At Despres' 2014 habeas trial, Attorney Brodeur identified, among others, a *pro se* motion dated June 26, 2002 as one such instance.  *See* Habeas Trial Tr., Doc. No. 27-2, at 145–47.  Indeed, the record reflects that Despres made a *pro se* motion dated June 26, 2002 "to remove" Attorney Fitzpatrick and "to let Defendant Mark Despres act pro-se."  *See* Mot., Doc. No. 28, at 21–22; *see also* Docket, Doc. No. 11-1, at 12 (indicating the motion was filed on June 28).  On July 24, the court held a hearing on that motion and deferred ruling until "after Carpenter is sentenced."  Docket, Doc. No. 11-1, at 12.  On September 12, the court held another hearing and denied Despres' motion to remove Attorney Fitzpatrick and to represent himself.  *See id.*; *see also* Mot., Doc. No. 28, at 21.  In its response to my order to show cause, the Commissioner also appears to acknowledge that the state trial court acted on (and denied) Despres' June 2002 motion to represent himself.  *See* Comm'rs Response, Doc. No. 27, at 14 n.5.

19

filed his *pro se* motion to correct an illegal sentence.  As described above, in that motion, Despres argued that (1) his convictions violated the Constitution's prohibition against double jeopardy and (2) the Connecticut trial court had no jurisdiction over him.  *See* Mot. to Correct Illegal Sentence, Doc. No. 11-3; *State v. Despres*, 107 Conn. App. at 166 (articulating the issues).  Although that case went up to the Connecticut Supreme Court, which affirmed the trial court's denial of the motion, the motion did not—even tangentially—raise either of the two grounds that Despres raises in this habeas petition.  In 2008, Despres filed his second habeas petition, which asserted one count of ineffective assistance of counsel by trial counsel (Attorney Fitzpatrick).  *See* Am. Petition, Doc. No. 27-4.  That petition also did not raise either of the grounds that Despres asserts in the instant petition:  Despres claimed that Attorney Fitzpatrick was ineffective only because he "failed to ensure that [Despres'] pleas were knowing, intelligent and voluntary."  *See id.* at 3.  In addition, Despres initially appealed the state habeas trial court's adverse decision against him, but he ultimately "withdrew that appeal," and so neither the Appellate Court nor the Connecticut Supreme Court had an opportunity to evaluate the claim.  *Despres*, 166 Conn. App. at 578; *see also* Docket, Doc. No. 11-6, at 3–4.

The closest issue regards Despres' third habeas petition, filed in 2011.  I have already described in detail that petition, the 2014 trial, the 2016 appellate brief, and the 2016 Appellate Court decision.  In the course of litigating and deciding Despres' third habeas petition, the litigants and witnesses, and the state habeas trial and appellate courts sometimes briefly touched on the first ground that Despres raises here:  The denial of the right to self-representation.  However, *all* of that discussion took place in the context of Despres' *ineffective assistance of counsel* claim regarding Attorney Schoenhorn.

For instance, in his operative habeas petition, Despres alleged in count one that he failed to file a direct appeal only because Attorney Schoenhorn was constitutionally ineffective. *See* Second Am. Petition, Doc. No. 11-10, at 4. Despres identified his thwarted desire to represent himself as *one of several reasons* why Attorney Schoenhorn knew or should have known that Despres might want to appeal his convictions. *See id.* At the trial on Despres' third habeas petition, Attorney Schoenhorn testified that Despres had never expressed a desire to represent himself. *See* Habeas Trial Tr., Doc. No. 27-2, at 83. Despres testified that he wanted to act *pro se*, filed several motion to that effect, and discussed that issue with Attorney Schoenhorn. *See id.* at 110, 124–25. In denying Despres' third habeas petition, the state habeas trial court characterized Despres' third habeas petition as advancing, in relevant part, the claim that "Attorney Schoenhorn was ineffective in failing to appeal." Mem. of Decision, Doc. No. 27-3, at 8. In articulating why Despres had failed to establish an ineffective assistance claim regarding Attorney Schoenhorn, the state habeas trial court wrote that Despres "failed to demonstrate that there were any nonfrivolous grounds to appeal," including regarding "the trial court's denial of his right to represent himself." *Id.* at 15.

In his appellate brief, Despres argued, in relevant part, that "the habeas court violated [his] constitutional right[] to due process of law when it misconstrued the ineffective assistance of counsel claim against sentencing counsel involving the right to appeal and used an erroneous standard and analysis in rejecting count one." Appellate Br., Doc. No. 11-11, at 17. As described above, Despres thus argued that the habeas court had applied the incorrect legal standard in considering whether Attorney Schoenhorn *had been constitutionally ineffective*. Despres asserted that the habeas court had improperly evaluated Despres' argument regarding

why Attorney Schoenhorn had been constitutionally ineffective, including by overlooking that Despres had established that "non-frivolous appellate issues" existed, such as "error in denying the petitioner's motions to represent himself." *Id.* at 21–22. Thus, on appeal, Despres' argument regarding the trial court's denial of his right to self-representation was advanced only as one basis for his ineffective assistance of counsel claim with respect to Attorney Schoenhorn.

And that is exactly how the Appellate Court viewed Despres' appeal. In affirming the trial court's dismissal, the Appellate Court concluded "that the habeas court applied the proper legal standard and analysis, and that the record supports the court's determination that [Despres] failed to demonstrate that Schoenhorn rendered ineffective assistance." *Despres*, 166 Conn. App. at 583. The Appellate Court commented on the self-representation issue only in the context of Despres' ineffective assistance of counsel claim to say that the "record supports the habeas court's determination[]" that Despres "failed to demonstrate that he had any nonfrivolous grounds to appeal," including because Despres "failed to provide an adequate legal or factual record with respect to those claims." *Id.* at 582–83 (cleaned up).[14]

In his petition for certification to the Connecticut Supreme Court, Despres again raised only issues regarding ineffective assistance of counsel. *See* Petition for Cert., Doc. No. 27-1, at 2 (arguing that the Appellate Court erred "when it found that the habeas court applied the proper legal standard and analysis, and that the record supports the court's determination that [Despres] failed to demonstrate that Schoenhorn rendered ineffective assistance"). Despres again highlighted the "numerous motions pertaining to his request to be pro se and his desire to

---

[14] Although, as described above, *see supra* n.13, I partially disagree with the state habeas trial court's conclusion, that disagreement does not affect my conclusion that Despres has not fairly presented the instant claims to all the relevant state courts.

22

withdraw his guilty plea" and reiterated his argument that those motions should have alerted

Attorney Schoenhorn that Despres would like to appeal. *See id.* at 4. Despres maintained that he

"did not need to prove precisely what issue[s] [he] would pursue [on appeal] or that they would

be successful[,]" and that the "expectation that [he] would brief the merits of claims that could

have been raised on appeal misses the point." *Id.* at 6–7. Thus, again, the federal constitutional

claim that Despres pressed was an ineffective assistance of counsel claim.

Considering all the above, it is clear that, in litigating his third habeas petition, Despres

mentioned his constitutional right to self-representation as only one of several bases for his

ineffective assistance of counsel claim regarding Attorney Schoenhorn and *not* as a stand-alone

claim of trial court error. "As courts in this circuit have consistently recognized, an ineffective

assistance claim is an insufficient vehicle for exhausting the underlying allegations when those

allegations are asserted for the first time as separate claims on habeas." *Hall v. Phillips*, 2007

WL 2156656, at *5 (E.D.N.Y. July 25, 2007) (citing cases); *see also Dominique v. Artus*, 25 F.

Supp. 3d 321, 331 (E.D.N.Y. 2014); *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)

(recognizing that "[a] court considering ineffective assistance might never reach the underlying

constitutional claims, and the rejection of the ineffective assistance claims without detailed

comment does not bespeak any necessary ruling on the underlying constitutional claims").

Despres indisputably did not raise the claim in his operative habeas complaint or in his appellate

briefs; that failure alone is likely enough to show non-exhaustion. *See Newland v. Comm'r of

Corr.*, 322 Conn. 664, 678 (2016) (reversing and remanding where habeas court read petition to

include claim not specifically raised); Connecticut Practice Book § 23-22(1) (petition must set

forth "specific facts upon which each specific claim of illegal confinement is based");

*Richardson*, 621 F.3d at 201 ("A prisoner has not fairly presented a federal claim before a state court if the federal claim is not mentioned in the prisoner's state court brief."). Despres' allegations concerning his right to self-representation as part of his ineffective of assistance of counsel claim were not the substantial equivalent of the self-representation claim he raises here. Accordingly, Despres' claim is unexhausted.

I recognize that Despres' claim regarding the denial of his right to self-representation is likely procedurally barred for failure to bring that claim on direct appeal, unless Despres can set forth cause for the default and resulting prejudice as set forth under *Wainwright v. Sykes*, 433 U.S. 72 (1977). Parts of Despres' instant petition appear to suggest "cause"—Despres repeatedly criticizes his counsel. *See* Despres' Opp'n, Doc. No. 21, at 6 ("If petitioner's habeas trial counsel is not diligent and is lacking experience and is po[or] at adjudicating, the petitioner should not be held responsible."); Despres' 2d Opp'n, Doc. No. 28, at 7 (complaining about the performance of Attorneys Patel and Brodeur). As described below, having concluded that Despres' claim is likely procedurally barred, I have the discretion to proceed and consider whether his petition should be dismissed for failure to show cause for the procedural default and prejudice resulting from any potential denial. However, not even the Commissioner argues that I should do that. *See* Comm'rs Response, Doc. No. 27, at 18–21. Instead, the Commissioner argues—and I agree—that I should merely dismiss Despres' petition without prejudice and allow him (should he wish) to attempt to bring his claim in state court.

Before AEDPA, "district courts were required to dismiss any petition containing unexhausted claims." *Fayton v. Connolly*, 2009 WL 1615995, at *4 (S.D.N.Y. June 9, 2009). Now, though, "district courts have the discretion to deny a petition on the merits notwithstanding

24

the failure of the applicant to exhaust the remedies available in the courts of the State." *Id.* (cleaned up). Although the "Second Circuit has not established a standard for determining when an unexhausted claim may be dismissed on the merits,[15] [] many district courts have chosen to deny unexhausted claims that are 'patently frivolous.'" *Fields v. Lee*, 2016 WL 889788, at *18 (S.D.N.Y. Jan. 28, 2016) (quoting *Naranjo v. Filion*, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003)); *see also Carter v. Fields*, 2020 WL 5819899, at *9 n.13 (E.D.N.Y. Sept. 29, 2020) ("Unexhausted claims can be denied on the merits only if they are unquestionably meritless.") (cleaned up).

The Commissioner concedes that it "cannot say on this record" that Despres' claim of being denied the right to self-representation is patently frivolous because "the claim was not presented, it was never litigated, and certainly not developed factually." Comm'rs Response, Doc. No. 27, at 20. In my view, too, Despres' claim is not patently frivolous. Thus, I will exercise my discretion and dismiss without prejudice—rather than consider and deny on the merits—Despres' claim of denial of the right to self-representation. Thus, Despres may seek further state habeas review of the claim.

    2.    Ground Two:  Trial Court Clerk's Failure to Advise Despres of Right to Appeal

Despres spends little time elucidating his second asserted ground for relief:  that the court clerk violated Despres' right to appeal by not "immediately inform[ing]" him "upon sentencing that he has a right to appeal." Petition, Doc. No. 1, at 8; *see also* Despres' 2d Opp'n, Doc. No.

---

[15]     The Second Circuit has expressly declined to adopt the position—taken by some other Courts of Appeals— that a federal habeas court may deny an unexhausted section 2254 habeas claim on the merits "only when it is perfectly clear that there is not even a colorable federal claim." *Abuzaid v. Mattox*, 726 F.3d 311, 322 n.8 (2d Cir. 2013) (cleaned up).

28, at 14 ("Most always the clerk tells the defendant you have a right to appeal and to have the appointment of counsel").  In my view, this petition marks the very first time that Despres has ever presented that issue to any court.  Despres does not point to any part of the record that reflects his having previously raised the claim.  To be sure, Despres has argued that Attorney Schoenhorn was constitutionally ineffective in failing to advise Despres of his right to appeal.  But that is a quite different issue.  Thus, the record indicates that the state courts have not had the opportunity to consider whether Despres' rights were violated by the court clerk's failure to inform him of his right to appeal.  The claim is unexhausted.

It is worth noting that this claim appears to be patently frivolous.  That is because Connecticut does not recognize an affirmative duty for a court clerk to advise a defendant of his right to appeal when that defendant has *pleaded guilty*.  *See Crawford,* 294 Conn. at 193 n.19 (noting that Connecticut "Practice Book § 43–30, governing the notification of the right to appeal, provides only that:  'Where there has been a conviction *after a trial* . . . it shall be the duty of the clerk of the court, immediately after the pronouncement of the sentence or the notice of a decision on the application for a writ of habeas corpus, to advise the defendant in writing of such rights as such defendant may have to an appeal . . . .'").

However, I will still dismiss the claim without prejudice rather than denying it on the merits.  That is because I have already decided not to address Despres' first ground for relief on the merits.  And I cannot consider the merits of an individual claim in a habeas petition unless I dismiss the entire petition on the merits.  *See Schwartz v. Comm'r of Corr.*, 2020 WL 6263545, at *4 (D. Conn. Oct. 23, 2020) ("[U]nexhausted claims may be reviewed on the merits only if the habeas court is going to deny the entire petition.") (quoting *Trimm v. Sheahan*, 2014 WL

26

3670723, at *1 n.1 (N.D.N.Y. July 23, 2014)); *see also Goupil v. Graham*, 2018 WL 1367333, at

*2 (W.D.N.Y. Mar. 17, 2018); *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002).

Accordingly, I dismiss without prejudice Despres' second ground for habeas relief as an

unexhausted claim.

## IV.    Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss, doc. no. 10, is

**granted**.  Despres' habeas petition is **dismissed without prejudice** because it presents claims

that have not been exhausted in Connecticut state courts.  Despres is free to attempt to pursue his

claims in Connecticut state court.  Despres may move to reopen this federal habeas case by

attaching an amended petition after fully exhausting his claims in state court.

The Clerk is instructed to close this case.  Any appeal from this order would not be taken

in good faith.  Thus, a certificate of appealability will not issue.


It is so ordered.

Dated at Bridgeport, Connecticut this 25th day of June 2021.


<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge